I think that everybody has been apprised, but I'll mention it on the record that due to unforeseen circumstances, I'm it. I'm the only panel member here. The other two members have already been assigned the case and they will hear the arguments by audio. So you're here for still for a valid reason. And I should announce a case Stevens v. USF Insurance at all. And we have Dan Hassan stop here for the appellant. And we have Hello, Miss Tara. Really? Right. Right. For the appellee and along with Mr. Michael McLeod, the appellee, and I see that you two have divided your time and. We'll advise you of the time. Constraints when the time comes, Mr. Hassan stop, you may proceed. May please the court. Yes. My name is Dan. I won't go through the very convoluted history that brought us here today. But what we're here today on is a rule 308 finding and a certified question that this court has agreed to consider. My question is whether an insurance company has a right to cancel an insurance policy at the request of a premium finance company. When the contract between the insured and the premium finance company is not dated as required under the Illinois premium finance act. And I won't beat around the bush on this. This very similar issue has been decided by the first district. And I'm sure the court is aware that selective insurance versus being a decision in 2007 has essentially answered our question. In the positive that they do have a right to cancel an insurance policy even when there is no power of attorney. And we respectfully suggest that that decision was wrongly decided. And that decision was the sole basis for the trial court's granting of summary judgment in favor of USF insurance in the underlying case. So we've asked this court as a sister court to the first district. But obviously not bound by the first district's precedent to revisit the issue that was looked at in selective insurance. And to, in all honesty, to abandon that particular decision and come to an independent decision contrary to what the first district decided. And several reasons that this court should refuse to follow the first district's precedent in selective versus Urbina. For one, the case itself was in conflict with an earlier decision from the first district. The Alliance Acceptance versus Yale Insurance Agency. That case was decided in 1995. Now that case did not involve the direct issue that we're asking the court to rule on today. But what the court stated in that particular opinion was that when a insurance, I'm sorry, when a premium finance company does not have a power of attorney to act on behalf of an insurer, that the insurance company has no right to cancel the policy when the premium finance company requests it. Now that was not, granted that was not the holding of the case. But that was stated in the opinion, in two different portions of the opinion. If I could. So that it's dicta. It is dicta, Your Honor. But it was basically, if you read the opinion, it was pretty much assumed by the court that, I think, you know, assumed without really any discussion, that when you don't have a power of attorney, when the premium finance company does not have the power of attorney to request cancellation, then the insurance company cannot cancel a particular policy based on a request of someone who doesn't have the power of attorney to act on the part of the insurer. So that's one reason we believe that selective insurance need not be followed by this court. And also, what I found curious is, in the selective versus Ravina case, they don't even mention the alliance acceptance opinion at all. So they at no point discuss why they're rejecting that particular point of law, or even, or any discussion whatsoever as to why they're not following that particular statement that the First District had made 12 years earlier. Another reason I propose that selective versus Ravina need not be followed in this particular case was that the federal opinion came out in 2007. There's been, this isn't like, we're not asking the court to abandon some longstanding rule of law that has been recognized many times over and over that many parties have relied upon. And in fact, the parties in this case, the issues in this case, cancellation was in 2004, three years before the selective insurance case even came out. So we're not asking, you know, this isn't a situation where it'd be fundamentally unfair to the insurance company to abandon that opinion because, I mean, you can't say, well, we relied on selective insurance and that's why we went ahead and canceled the policy. Selective insurance opinion didn't even exist at the time this took place. So, and some specific reasons about the opinion itself that we believe should not only compel this court not to follow the opinion but to actually abandon it. There's many flaws, I believe, with the opinion itself. I would like to go over those briefly, Your Honor. First of all, the three cases that selective insurance relies upon to reach its conclusion all focus on the wonderful premium finance company's obligations with regards to providing notice to an insured before cancellation. That's Universal Fire v. Jamin, Illinois Insurance Guarantee Fund v. Evanston, paper shredding, and Half v. Charter of Fire. And these are also the opinions that my opponent relies upon in her brief as well. The problem with that, Your Honor, is that by taking these opinions that speak only to the notice requirements, whose obligation it is to provide notice under the statute, the selective insurance court took this giant leap of faith and said, well, since the notice requirements fall only upon the premium finance company, we're going to say that the insurance company therefore doesn't even have to check whether there's a power of attorney in place to cancel the policy. And I believe that's a fundamentally different question. To go from that to say whose obligation it is to provide notice, to say that we don't even have to check if there's a power of attorney is not consistent. It's just a step way too far in interpreting these three prior opinions. And the reason for that is, Mr. McGlynn, I think, made an excellent point in his brief, is that, you know, take the situation where a normal, well, I wouldn't say normal, but in other situations where there's a power of attorney involved, such as a request for medical records or a request by someone to act on behalf of somebody else, whether it be requesting medical records or asking for medical treatment or even in the financial situation where you go to a bank and say, you know, I'm a power of attorney for Joe Smith. I need to take out $10,000 from Joe Smith's account. Now, certainly the bank has an obligation, you know, to check whether you are actually the power of attorney. I couldn't just go into a bank and say I'm a power of attorney for Joe Smith and ask for $10,000. Oh, okay, sure, here you go. Basically, Selective Insurance is saying that an insurance company can do that. When a premium finance company comes up and says, hey, I'm a power of attorney for Joe Smith, cancel this policy. According to Selective Insurance, they can just do it. They don't have to check to make sure they really are a power of attorney or that there's even an agreement in place or that this agreement complies with the insurance code. And to take that step from saying whose obligation is it to provide notice in a premium finance situation to say that an insurance company is basically absolved from liability if it acts on behalf of a premium finance company, regardless of whether they're actually a power of attorney, is a step way too far. And the Selective Insurance Court really overstepped its bounds when it relied upon these cases to reach the opinion that it reached. Another reason is that the Selective Insurance opinion seems to, for reasons I can't quite understand myself, seems to kind of build a wall around the Premium Finance Act, which is part of the insurance code, and says that since the Premium Finance Act provides certain obligations on the part of a premium finance company, then nothing within that act can obligate an insurance company. The problem with that is that the statute in the insurance code is clearly intertwined, particularly with respect to this particular issue that we're talking about. Premium Finance Act, the relevant provision about cancellation is Section 513A11 of the insurance code. That's what gives the premium finance company the authority to cancel a policy when it has a power of attorney from the insured. If you look at Section 143.14, which is cited and spelled out in our briefs, that section clearly applies to insurance companies, not premium financing companies. And what 143.14 spells out what steps that insurance company has to take in order to cancel the policy. It can cancel a policy if it has to provide a reason for the cancellation, a written notice, 10 days notice if it's for certain reasons, 30 days for other reasons. And it has to keep a proof of mailing that it actually sent this cancellation notice out. Now what that section also says is that when the insurance company cancels at the request of the premium finance company, which has power of attorney, which has power of attorney, it's actually spelled out in the statute. When the premium finance company acts through its power of attorney, then the insurance company does not have to follow those steps. So basically, the reason these statutes are intertwined is that the cancellation provisions under the Premium Finance Act act as an exception to an insurance company's otherwise obligations to provide notice of cancellation. So for the Selective Insurance Court to say that these statutes are completely separated and that the insurance company has no obligations whatsoever in light of the Premium Finance Act, it doesn't fly, to be honest with you. And in fact, the Selective Insurance case never even mentions 143.14, which I find interesting as well. So you're not really, in no way, really distinguishing selective. You're just saying that we should not follow. Not at all, Your Honor. I come in all honesty. Selective Insurance, I believe the trial court was correct. It's on point. It was wrongly decided. Wrongly decided, correct, Your Honor. And another reason, this Selective Insurance was purportedly based on statutory interpretation of the insurance code. And the conclusion ultimately that it reached was that an insurance company does not have to An insurance company can cancel a policy based on just simply the request of the premium finance company, even if that premium finance company doesn't have the power of attorney to make such a request. Well, are they basically saying that the insurance company has a duty to determine whether or not there's the authority on the part of the premium finance company? No, that's what we are proposing. Well, that's what I'm saying. Oh, yes. Yes, that's what we are proposing. That's the rule that we believe is more reasonable. And it's compatible with what any other institute has to do when faced with a request by someone who purports to be acting as a power of attorney. And what we're asking the courts to say is not necessarily that they have to do any substantial digging into the background as to whether the agreement was forged or, you know, written into the record. Why wouldn't they have to do any substantial background determination if you're saying that they have to determine whether or not it's in fact, they in fact have authority? All we're asking the courts to do is to find that they have to at least, at the very least, determine whether the agreement, well, first of all, whether there was agreement and whether that agreement was facially valid. And under 513.89 of the insurance code, to be facially valid, this insurance, this agreement has to be signed and dated by the insured. And that's the situation that we're facing here. This proposed agreement was not dated by the insured. It was signed but not dated. It was signed but not dated, correct. And for whatever reason, the legislature, when it wrote that statute, believed that the dating of the agreement was important. It could have said that, you know, the legislature could have said as long as it's signed by the insured, it's valid, or as long as it's signed and notarized, signed and witnessed. But what they chose to put in the statute was that it has to be signed and dated. Now, all we're asking, I mean, the burden upon an insurance company that we're asking to replace is not a vulnerable burden. All we're asking is that an insurance company verify that there's a facially valid agreement between the insured and the person who's pointed out as the power of attorney of the insured. This is no more onerous than, like, my bank example. If I go to the bank and I say, give me $10,000 for Joe Smith's economy as the power of attorney, well, sure, I'm going to have to prove, you know, at least some kind of facially valid agreement or documentation that I actually am his power of attorney. And what Selective Insurance did, for whatever reason, they carved out, they basically created an immunity on the part of an insurance company that doesn't apply to any other institute. And as I was saying just a minute ago, the Selective Insurance case was based on statutory interpretation, but there's nothing in the statute, in the insurance code, the premium finance code, they haven't even hinted at saying that an insurance company is immune from any liability, so long as it acts, you know, at the request of any premium finance company. Basically, what Selective Insurance has done is given an insurance company more rights or more protections than any other institute or company that I can think of, at least, with regards to what to do when you're faced with somebody who says they're acting as a power of attorney for somebody else. And a couple more reasons I believe the Selective Insurance case should not be filed is that you take this case to its logical extreme and it's just fundamentally unfair. Basically, in Selective Insurance, they said that there was actually no agreement, no signed agreement between insured and premium finance company. And yet, the court said premium finance company, or when premium finance company asks insurance company to cancel, and they cancel, you know, that's fine. The insurer who actually has a valid contract with the insurance company has no remedy against that insurance company. Their remedy, according to the court, has to be against this premium finance company, which they may not have even had a contract with, according to Selective Insurance. So, and, you know, I pointed out in my brief, the statute only requires that premium finance companies carry $50,000 in assets. So what if you have, say I take a policy with Travelers Insurance, a million dollar policy with Travelers. A premium finance company gets confused, the computer's right there, I don't know what happens, but somehow they think that they have a power of attorney for me. And they go ahead and they erroneously send me a bill, even though I don't have any relationship with them. You know, I don't pay because I have no business with this premium finance company. Premium finance company, according to Selective Insurance, will go to Travelers and cancel my policy. And I'm stuck. I say, okay Travelers, I had a loss, you owe me $1,000,000 in coverage. And Travelers says, oh, no, no, no. The premium finance company said that they were your power of attorney, and they're going to cancel the policy on your behalf. Well, I never came to the authority to do that, according to Selective Insurance. Too bad, you go after the premium finance company. Well, I don't even know the premium finance company. I didn't contract with them. According to the law, then we have to have $50,000 in assets. So my $1,000,000 policy turns into a $50,000, at most a $50,000 recovery. And all because the insurance company didn't do the minimum, the bare minimum of verifying that there was a facially valid contract between me and this premium finance company that gave my company the power of attorney to act on my behalf. Mr. Hasenstab, you'll be given an opportunity for rebuttal. Thank you for your argument. Thank you, Your Honor. Ms. Reiner. May it please the court, counsel. My name is Tara Reineck, and I represent USF Insurance, the affilee in this matter. The real issue, there is a certified issue here, but the real issue is whether the insurer has a right to rely upon the cancellation request made by the premium financing company, and whether the insurer has the duty to independently verify whether the premium financing company has complied with all elements of the premium financing act. Do you think that's different than the certified question, which we're pretty much bound to follow? The certified question is before the court, but this is based off of the reasoning in the selective insurance case, which is the only case that has addressed the facts and issues in this case on point. As in our case, the insurer, as you know, in selective insurance, had entered into a premium financing agreement. The written agreement, as is attached to the appendix of the appellant's brief, contained a power of attorney provision. The power of attorney provision was exactly the same identical as the power of attorney provision in our premium financing agreement. As in our case, the insurer stopped making payments, prompting the premium financing company to request cancellation to the insurance company. As in our case, there was then a loss. They filed a claim. The coverage for that loss was denied, both in our case and in selective insurance. The issue before selective, the issue that selective insurance had to address was whether the deficiency in the premium financing agreement, as appellant has told you, the deficiency of the premium financing agreement in our case was a lack of a date, which was not in compliance with section 215 ILCS 513A9A. In our case, the premium financing agreement was signed but not dated. Also a deficiency. What the court looked at was whether, despite the deficiency in the premium financing contract, could they still rely upon the premium financing's request for cancellation? And did they have in the end an independent duty to verify that the premium financing company was in compliance at the time that it entered into the agreement with the insurer? The selective insurance case looked at a variety of cases that didn't quite deal with this specific section of the act. It dealt with other various violations of the premium financing company, mostly dealing with notice issues to third parties, timeliness of notice, but it still dealt with violations of the premium financing company and its effect on the cancellation. Not one of those cases, not one case has ever decided that based on a premium financing's violation of any section of the act had resulted in the invalidation of the cancellation that the insurer later did. And there's not one case presented on that issue. And it makes sense if you look at the statute. If you look at the statute, which is section 513A9, if you look at B, section B, which requires that the premium financing company furnish full and complete disclosures of the terms and conditions of the premium financing agreement. If I just could skip ahead, it says, to the insurer. So in this case, unlike selective, we know that he at least was aware of it because he signed it. He may not have dated it, but he did read whatever the terms were of the contract. Absolutely. In selective, we don't know whether or not he even read it, let alone we know that the person did not sign or date. Yes, that is correct. But, Your Honor, based on the, I mean, what we're looking at is not the contract between the premium financing company and the insurer, but what is the obligation and duty of the insurer with request, with response to honoring that request for cancellation. And if the legislature had intended the insurer to have an independent duty to verify that the premium financing company was in compliance with all aspects of the act at the time that entered into the premium financing agreement with the insured, then it would have so stated in the act itself. Wouldn't it require the premium financing company to not just send a copy of the premium financing agreement to the insured, but also to the insurer so that they would know that they were in compliance? Because the other side of this would be that they would, if the insurer was obligated to, if the legislature intended for the insurer to be obligated to verify this, but they didn't have a copy of the agreement, they would have to verify this after they received the request for cancellation. How would that even work? I mean, they would receive the request. Then they'd have to contact the premium financing company, get a copy of the premium financing agreement, and then look and make sure that all the elements, which are including date, signature, installment payments, when they're going to be paid, I mean, down to type size. Why couldn't they get it at the time that it's supposedly signed, allegedly signed? There's no requirement in the act for them to do that. No, I understand that. You're just saying that it's impractical. I think that at the time that this piece of, this statute was put into effect, I think that the legislature had thought about this issue. Could they require the insurer to verify this? Would this even be possible? Because, again, because there's no obligation for them to send the premium financing agreement to the insurer, the time that they would have to do this would be after the request for cancellation came in. Well, the insurer has its own obligations under the code, as you know. They have to cancel within a certain period of time. Could they even do this within that amount of time without violating the code themselves as well? Yes, and maybe this is a little tangential, but an insurer generally has a choice of whether or not to pay the entire premium or go through a PFA. Is that correct? It's not the insurer's choice. It's the insurer's choice. Did I say insurer? Yes, insurer. Because it's an installment payment, and it's being financed by someone else. The premium financing company. So they could, if they wanted to, avoid that and just directly pay whatever the full premium is. Absolutely, to the insurer. Right. But this is a situation where the relationship is between the insurer and the premium financing company. The insurer is not a party to this. I understand that. And that's why I believe that the statutes are created in the way that they're created, because how could they put that duty on the insurer? Right, and it's a benefit to the insured, not the insured necessarily. They just want their money. Absolutely. And it's clear, again, from the statute, that that is what the legislature intended. What is also clear from the statute, which is a section of the statute that the appellant has raised, is if there's a violation of the act by the premium financing company, why doesn't that result in invalidation of the cancellation made by the insurer? Well, under Section 1.4.3.14, which is under the Illinois Insurance Code, it's directed to the insurer, and it requires them to provide notice of cancellation to the insured. And it specifically states in there that if the insurer fails to do this, the cancellation will be ineffective. That's clear from the language of Section 1.4.3.14. That language is not found anywhere in the sections of the act that we're here to discuss today, which is 2.15 ILCS 513A9A, as well as A11A. There's nothing in there that says that violations of this section of the code will result in an ineffective cancellation. And again, had the legislature intended for that result, then they would have put that in there, because they clearly put that in there under the other part of the code directed to the insurer. Clearly, the legislature found that providing notice from the insurer to the insured at the time of cancellation was of such importance that a violation of that would deem the cancellation ineffective. They did not do that with respect to the two sections of the act that are applicable here. Again, the reasoning in the selective insurance case makes sense, not only from the statutes and the writing of the statutes, but also just from the sheer practical sense of it. I mean, how could the insurer, what would the ramifications be on the insurance industry in general if they were required to verify every single previous science agreement? I mean, they're not a party to this. They're not involved in that agreement. And they're not even, I mean, there's nothing under the statute that requires them to receive a copy of it. It just wouldn't, it wouldn't work. The appellant keeps raising the importance of alliance acceptance, the alliance acceptance case that was decided in 1995. And as I point out in my brief, it's completely distinguishable. The only issue that's addressed in alliance acceptance is whether the premium financing company had a standing to recoup unearned premiums due to a canceled policy. They never addressed whether the cancellation was valid. That was already an assumed fact that's in the case. The only thing, the only issue they addressed was standing. It's not applicable, and that's why it was never even addressed in the selective insurance decision. It's just not applicable to the facts of this case. And it should be disregarded in this context, too, because we have the same facts as selective insurance. The appellant also raises the unfairness of the decision in the selective insurance, meaning that it's unfair that they, that the insured would then have to go after the premium financing company, which is the proper recourse in this, under the Evanson paper case. If it was the premium financing company that didn't follow all their obligations under the act, then that's the party that they should seek recourse from, not the insured. The case is very clear on that. The appellant says, well, they only are required to keep $50,000 in assets. Well, that's just the threshold. I mean, that doesn't mean that the premium financing company that they're seeking recourse from has just $50,000 in assets. They could have a million dollars in assets. We don't know, but that shouldn't be a basis of unfairness here for the insured. They chose to enter into the contract. Just in closing, you know, despite, you know, all of the arguments that the appellant has made to date, there hasn't been any issue of material fact here to dispute that the policy was, in fact, And there's no case law that has, that the appellant has presented to distinguish the holding and selective insurance, which, again, is not just based on, it's not just dicta, as the Alliance case was. It is sound, it's a sound-reasoned argument based on the statutes themselves. The legislature, when it created these statutes, which were, in fact, the statutes that were in effect in 2004 were repealed, and by the time the selective insurance decision came around 2005, they were slightly modified, but nothing within regards to what we're addressing here. But that is what the, at the time that the cancellation was made by the insurer, that was the statutes that were in effect, and it makes sense that the insurer could rely on the premium financing's request for cancellation at the time they did, and that they have no duty to verify whether or not the premium financing has complied with all aspects of the act. So we request that you, we request that this court affirm the decision made by the trial court in granting summary judgment to USF insurance. Thank you. Thank you, Ms. Reineck, and we will take the matter under advisement. I think you were allotted, what is it, five minutes, Mr. McLean? Okay, thank you. Keep going. Okay. I'm not taking it from you yet, so go ahead. I'm going to talk real fast, I hope. Okay, what I'd like to do is talk about how the general law out there, well settled, would indicate unequivocally that there is a duty on the part of the insurance company here to ascertain the extent of the agent's authority. That's well settled law. Everybody has to do that. So I'll talk about the general law, then I'll get into the specifics of the statute. In particular, the two cases that have been talked about. The first thing in terms of the general nature of it. Common sense comports with what the duties are and why this insurance company has to be treated like everybody else, like everybody else. All right, you walk into a bank and you say, I'm taking Granny's money. And they say, well, wait a minute, you have to prove to us that you can take Granny's money. Well, she's my granny. No, you show us something in writing. And I'm going to verify that you can take Granny's writing. There's a case cited in here in the brief where I point out that if you go in and you try to abuse the power of attorney, you have to verify, and they have a guarantee. Well, you had an authority to do some things, but you didn't have an authority to do a guarantee. So people – I call – I have $5 a runner. When I try to call and get their report cards at their colleges and their graduate schools, they tell me, Dad, you do not have the authority. You don't have the authority to get their report cards. You, Dad, send to us at Cornell, Johns Hopkins, Mayo Clinic. You send us the authorizations. You send us something they signed and properly dated, and then we'll send you report cards. But by the way, we are sending you the tuition bill. So in common sense says what the general law is. And the general law under Illinois, well said, is that an insurance company should be treated like Dad, should be treated like the guy that comes in to try to take Granny's money. And the duty is articulated on page 5 of my brief is a – they have a duty, the insurance company. In this case, anybody who's presented with a power of attorney has – they have a duty to ascertain the extent of the agent's authority. They're bound at their peril to ascertain not only the existence of the agency but also the extent of authority. They have to use reasonable diligence, prudence to ascertain whether that person, Dad, Granny, the premium finance company, is acting within the scope of their authority. And if it's written authority, they are bound to inform themselves of its extent and to inquire into its limitations. That's the general law. The insurance company is no different from anybody else. In this transaction, they had a duty to use reasonable diligence to ascertain whether the premium finance company had the authority to say cancel our insurance policy. Now, the interesting thing about this is – think about this. You have a power of attorney. And what do you have with a power of attorney? That is a fiduciary relationship. In this situation, you have a situation where a fiduciary is saying I am asking you to act in direct contravention to the rights of my principle. All right? So the statute, which may allow for that, is very strict, should be strictly construed, and I'll get to it later as far as interpretation of the statute. But think about what the consequence of here is and how the legislature doesn't think that a fiduciary relationship is something that would be taken at ease. The legislature said you better have a valid power of attorney, and the power of attorney has to be dated. And you and I and others know why dated power of attorneys are appropriate. I said in the medical authorization. If I don't have a properly dated medical authorization or if it's stale, they send it back and they say we're not giving you the records. If you have an undated document, just like this, a power of attorney in this case, undated, that means somebody can continue to use the same document after the principal has actually revoked authority. But they just keep using it. Okay, now, in this case, factually, what you have is it's common for people that don't have the money to say to a premium finance company, I'll pay you a premium, you get the policy, I'll pay you in time, and then you get the policy from the insurance company, and I'll pay you over time. Now, they have the authority to act on behalf of the insurer through this written agreement, but their authority is limited. And in addition to that, the insurance company, when they take a look at this, they have to independently verify the nature, the scope, and the extent of the authority of the premium finance company. Now, I will disagree as to the significance getting specifically to the alliance acceptance case, the two cases that we talked about. What's happening here today? Premium finance company isn't here. Why? You might ask yourself, why? And, you know, part of it might be just that there's a – it's not just an insurance company, it's an insurance affiliation, cooperation, whatever. The thing is that in alliance, I think that when you don't have everything properly briefed, you don't always get good law, you don't always get the right arguments. And I don't think that the case in the first district that was decided was decided properly because this argument wasn't made, and I don't think it was made. They didn't even cite alliance – You can finish your statement. Okay. They didn't cite alliance acceptance. And if you look at alliance acceptance, it was – there was a decision decided here. What they said was – and the insurance company took advantage of it. In that case, what happened was the premium finance company said, hey, we canceled the policy. Give us our money back. And the insurance sure said no. You didn't present us with the power of attorney. You did not present us with the power of attorney, so we get to keep your money. We get to keep the premium finance company's money because you didn't present us with a valid power of attorney. And what they said was that they interpreted the statute, and they said the statutory obligations arose at the time of the cancellation of the policies were sought. The provisions required the insurer to refuse to cancel the insurance policies purchased unless the agreements contained powers of attorney, valid powers of attorney. Okay. Mr. McGlenn, I know you have a lot more to say, and I'm sorry, but your time has expired. Thank you. Can I get a five-minute break? Sure, you can. And that would be another five minutes, right? Yes. Okay. So the point I was making about the alliance acceptance is this. Okay. In that situation, you had the premium finance company and the insurer involved. Okay. Here, what I have is I have the family of the guy that burned to death in the house because the insurance was canceled, and they're not doing it. And so I'm a different party. But in alliance acceptance, what you had was just the opposite of what we have here, just the opposite. And that is the insurance company is using as a shield and saying, we're not going to give you your money back because you didn't give us a proper power of attorney. If you want us to cancel your policy, give us a proper power of attorney. And if you don't, we don't have to cancel it. We're going to keep your money. And that's what the court was saying. The provisions required the required. And this is an interpretation of this statute. The provisions of the insurance code require the insurer to refuse to cancel the insurance policies purchased with funds borrowed pursuant to that agreement unless the agreement contained a power of attorney. So the point in that case was not cited in alliance, in the selective case. Was there a power of attorney at all? I mean, was there a form or anything sent in alliance? In alliance, my recollection is that the court was observing that they did not provide to the insurer a valid power of attorney. And they didn't talk about a signature or whatever, but they did not produce a document that showed that they had the authority to cancel the policy. And so the insurance company said, and the court said, the court says, the insurer, why are you picking on the insurance company? They get to keep your money. Because when you look at the statute, it says, and here's what the court said, the defendants, that's the insurance company, had a statutory obligation to comply with the provisions of the insurance code. Statutory obligations arose not at the time that the insurance policies were issued, but rather at the time the cancellations of the policies were sought. And so that's when the insurance company's duty arose. So they had a duty to, like everybody else, like Dan, everybody else, inquire of that duty. The duty to ascertain the extent of authority. So they said... Inquire to verify to what extent. All they had to do in our case is to say, show us your authority. You've got a minimum to do with something. Show us the power of attorney. This isn't valid. It's not dated. We're not going to do anything. We're not going to do anything. We're going to keep your money. I'm going to give you your money back when I can cancel the policy. That's what their duty was under the statute. That's what Alliance acceptance said. Selective, you know. I said, we don't have a freaking finance company here today. But, you know, I think sometimes you don't have everybody making the right arguments, and so then you end up with bad luck. And I think Alliance acceptance was better reasoned, better decided, and did actually address specifically protecting the insurer. Saying they get to keep the money because you didn't show them the power of attorney. And so this is one where... And they said that you've got to leave the insurer alone. They acted properly. They couldn't cancel the policy because you didn't give them a valid power of attorney. They had a duty not to cancel the policy under the statute that we're talking about. And so the Alliance acceptance provision is in accord with the general law of minimal duties to verify that somebody does have the... They're found at their peril to ascertain the existence of the agency and the extent of their authority. They have to use reasonable diligence and prudence to ascertain whether the premium finance company is acting within the scope of their power. All they would have to do is give us the power of attorney and it's valid. We'll do what you say. And then when they say, well, it's a big burden for us to independently verify. No, you have a duty to independently verify. Just like when you walk in, somebody walks in and tries to take granny's money. There is an independent duty to ascertain, use reasonable diligence and prudence to find out, inform yourself of the extent and the limitations of the authority. It's not that they have to. And a duty arose when the cancellation came up, according to the first district in this selected service case. Or not selected service, I'm sorry. The Alliance case. And so why not treat this insurance company the same way we treat everybody when someone is trying to act on the strength of the power of attorney and that is say, you need to use reasonable diligence. Thank you. Thank you, Mr. McGlynn. Mr. Hasenstab and Ms. Reinick for your arguments and briefs. We'll take the matter under advisement and render a ruling in due course. And I think there may be a motion outstanding. There is a motion I'm looking at. I'm not sure it said that we would take it with the case. Well, okay. So then I think that's been resolved. Thank you. Thank you all.